UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JORDEN BROWN,

       **Plaintiff,**

                                  **Case No. 1:21-cv-540**
       v.                       **JUDGE DOUGLAS R. COLE**

SAMUEL GILES, et al.,

       **Defendants.**

## OPINION AND ORDER

This cause comes before the Court on Defendant Samuel Giles, Eric Spurlock, Bill Murphy, and the Village of Coal Grove's (collectively, the "Defendants") Motion to Dismiss (Doc. 5). That motion asks the Court to dismiss Plaintiff Jorden Brown's Complaint (Doc. 1) for failure to state a claim upon which relief can be granted. For the reasons discussed below, the Court **GRANTS** the Defendants' Motion to Dismiss (Doc. 5).

## BACKGROUND

On August 21, 2019, Brown's mother called the Coal Grove Police Department to report that Brown had a warrant out for his arrest and was parked outside Giovanni's Pizza, where she worked. Officer Giles responded. (Doc. 1, #4). When Giles asked Brown for his name, Brown provided a false name—"Jorden Storms." (Exh. A).[1] Brown repeatedly affirmed the correctness of that name, even when Giles asked if

---

[1] For clarity, this Opinion's citations to Exhibit A refer to events that occurred as shown on Officer Giles's body-worn camera footage and attached to the Complaint as Exhibit A.

Jorden's last name might be "Brown." (*Id.*). Despite several requests from Giles that Brown stay in his car, Brown eventually exited the vehicle. (*Id.*).

When Giles inexplicably stepped away to take a phone call, Brown fled on foot. (*Id.*). Giles gave chase. Without commanding Brown to stop, or providing any verbal warning, Giles almost immediately tased Brown. (*Id.*). One of the two taser prongs struck Giles in the head, and the other hit him in his back. The electric shock from the taser caused Brown to go limp and fall to the ground. As a result, Brown hit his head on the pavement and started bleeding. From the video, it also appears that either as a result of being tased or the injuries suffered when he fell, Brown could not speak and began seizing. (*Id.*).

Brown further asserts that, while he lay on the ground incapacitated because of the original taser shot, Giles tased Brown in "drive stun" mode. (Doc. 1, #10). This refers to a mode of taser operation in which the officer removes the probes from the taser and stuns the body with the taser itself, rather than firing the probes at the body from a cartridge.

Several minutes after Giles tased Brown, Giles can be heard on scene referring to the high temperature and stating that "it's too hot to run." (*Id.* at #7). Brown alleges that he spent five days in a coma and suffered a broken collarbone, brain damage, and mental pain and suffering because of the incident. (*Id.* at #13).

Brown filed his Complaint in this Court on August 20, 2021. (*Id.*). He pleads one cause of action under 42 U.S.C. § 1983, alleging that the Defendants violated his constitutional rights under the Fourth and Fourteenth Amendments. (*Id.* at #13–14).

He first alleges that Officer Giles tased him in a manner that violated clearly established law. As for the other defendants, he claims that they are liable because the police department had no written policies covering taser "use, deployment, safety, or training." (*Id.* at #10). He also asserts that the Coal Grove Defendants "enacted policies and pursued customs related to" tasers which made it reasonably foreseeable that officers would use excessive force in deploying them, causing serious injury. (*Id.* at #11). And Brown believes that the Coal Grove Defendants failed to "adequately train and supervise" its officers. (*Id.*).

The Defendants moved to dismiss the claim for failure to state a claim on October 21, 2021. (Doc. 5). Giles argues that he is entitled to qualified immunity, because Brown has not adequately alleged that Giles violated a clearly established constitutional right. The police chief at the time the events occurred, Spurlock, says that the individual-capacity claim against him fails for lack of allegations that he played any role in the incident. The remaining defendants, against whom Brown asserts only *Monell*-type claims, argue that Brown has failed to sufficiently allege any custom, law, or policy that gave rise to the incident. Brown has responded (Doc. 8), and the matter is now ripe.

## LAW AND ANALYSIS

A complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citation omitted). Brown "must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed

plausible." *Id.* In making that assessment, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus construed, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 546–47, such that the asserted claim is "plausible on its face," *Iqbal*, 556 U.S. at 678.

As mentioned above, here Brown lists only one cause of action against the Defendants. Specifically, he claims that the Defendants violated 42 U.S.C. § 1983 as follows:

> 79. All Defendants have, under color of state law, through their actions, ratifications, and/or policies or customs, subjected Mr. Brown to excessive force and failed to protect him from such force thus depriving him of rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution.
>
> 80. All Defendants have, under color of state law, through their actions, ratifications, and/or policies or customs, denied Mr. Brown his rights to Due Process, including the privileges and immunities secured to him by the Fourth, and Fourteenth Amendments to the United States Constitution.
>
> 81. Mr. Brown suffered serious and lasting harm as a result of the actions of all Defendants including, without limitation, physical injury, pain, suffering, and emotional distress. Mr. Brown continues to suffer both physically and emotionally in the wake of these events.

(Doc. 1, #13–14). After some recent substitutions and dismissals, however, that single cause of action has been refined into the following specific claims: (1) a claim against Officer Giles in his individual capacity; (2) a claim against former Village of Coal Grove Chief of Police Eric Spurlock in his individual capacity; (3) a claim against

current Village of Coal Grove Chief of Police Bill Murphy in his official capacity; and

(4) a claim against the Village of Coal Grove. The Court considers each of these claims

in turn.

## A.   Individual Capacity Claim Against Giles

Start with Brown's claim against Giles. Brown contends that Giles subjected

him to excessive force and failed to protect him, in violation of the Fourth and

Fourteenth Amendments. (Doc. 1, #13). Giles, for his part, believes that the Court

should dismiss Brown's claims against him because he is entitled to qualified

immunity. (Doc. 5, #38–44). The Court agrees with Giles.

The Court acknowledges that qualified immunity and dismissal on the

pleadings are often a "bad fit." *Meadows v. Coppick*, No. 1:21-CV-322, 2022 WL

14752283, at *6 (S.D. Ohio Oct. 25, 2022) (citing *Siefert v. Hamilton Cnty.*, 951 F.3d

753, 761 (6th Cir. 2020)). But *Siefert* and related cases ground their concerns in

fairness—pointing out that "without more than the complaint to go on, the court

cannot fairly tell whether a case is obvious or squarely governed by precedent." 951

F.3d at 761 (cleaned up). And the preference against granting qualified immunity at

this stage is "general" and not "absolute." *Id.*

This case presents an exception to that general preference. This is mainly

because Brown attached Giles's relevant body camera footage to the Complaint. (*See*

Exh. A). The Court generally considers only the pleadings at this stage but may

consider other evidence if the complaint refers to it and if it is central to the plaintiff's

claims. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88–89 (6th Cir. 1997), *overruled on*

*other grounds*, *Swierkiwicz v. Sorema, N.A.*, 534 U.S. 506 (2002). Brown refers to the attached body camera footage multiple times in the Complaint. (*See* Doc. 1, #5). And the footage is central to Brown's claims against Giles, as the footage depicts the events underlying those claims. So the Court will consider the body camera footage at this stage. Thus armed, the Court finds itself well-equipped to examine many of the actual facts of Giles's encounter with Brown that day. Those facts shed light on the plausibility of Brown's claims.

Turning to the substance of Giles's qualified immunity defense, the Court must determine (1) whether Brown has plausibly alleged a violation of his constitutional rights, and (2) whether that constitutional right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). The Court may consider those questions in either order. *Id.* at 242.

The Court begins its analysis here with the latter question—whether Brown has identified a clearly established constitutional right. *Id.* at 227; *Jackson v. City of Cleveland*, 925 F.3d 793, 822 (6th Cir. 2019). A constitutional right is clearly established if, when the officer acted, "it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The contours of the alleged right must be "sufficiently clear that every reasonable official would have understood" that his actions violated that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up).

Brown claims that Giles's "use of force" violated clearly established constitutional law. He bases this on two theories: first, that Giles tasing him as he

fled down an alley constituted excessive force under the Fourth and Fourteenth Amendments; and second, that Giles tasing him with the taser in "drive stun" mode likewise constituted unconstitutionally excessive force. (Doc. 1, 8–10).

The Court starts with the latter. As noted above, Giles's body camera footage allows the Court to assess the veracity of some of Brown's factual allegations. (*See* Exh. A.). Particularly relevant to Brown's second theory, the footage reveals that, contrary to Brown's assertions, Giles never used the taser in drive-stun mode. The video depicts that the first time that Giles touches Brown directly with the taser, the probe cartridge is still attached. And as Giles points out, when the probe cartridge is still attached, the taser "cannot be used in drive stun mode." (Doc. 5, #44). The second time that Giles touches Brown directly with the taser, his finger is not on the trigger. (Exh. A). Nor is the noise that a taser makes when used in drive stun mode audible in either case. Consistent with that, Giles also points out that he never used the taser in drive-stun mode. (Doc. 5, #44). Given the body camera footage attached to the Complaint, the Court agrees.

The only act on which to potentially base liability, then, is Giles tasing Brown so quickly after Brown fled. On that front, Giles argues that tasing Brown in that way did not violate a clearly established right.[2] (*Id.*). As support, he cites *Cockrell v. Cincinnati*, 468 F. App'x 491 (6th Cir. 2012). That case found it unclear "whether tasing a suspect who fled from the scene of a nonviolent misdemeanor constituted

---

[2] Ha also claims that, had he used the taser on Brown in drive-stun mode as Brown alleges, that still would not violate a clearly established right. Because the Court concludes that Brown cannot plausibly allege that Giles used the taser in drive-stun mode, the Court need not reach this alternate argument,

excessive force." *Id.* at 498. Giles says that the same logic applies to Brown's flight here.[3] Brown counters by arguing that the "level of force at issue in this case renders *Cockrell* inapposite." (Response to MTD, Doc. 8, #82). According to Brown, this case is more like *Peabody v. Perry Twp.*, 2013 WL 1327026 (S.D. Ohio Mar. 29, 2013). (*Id.*). Given that dispute, an examination of the two cases provides a good starting point.

In the first case, Keith Cockrell jaywalked in front of a police officer. *Cockrell*, 468 F. App'x at 491. That officer took off running after Cockrell, who also started running. *Id.* Without ordering him to stop or placing him under arrest, the officer tased Cockrell. *Id.* The hit temporarily paralyzed Cockrell, who hit the pavement immediately and suffered lacerations and abrasions to his face. *Id.* The district court denied qualified immunity to the officer, but the Sixth Circuit reversed. *Id.* at 498. In its view, the law was unclear as to "whether tasing a suspect who fled from the scene of a nonviolent misdemeanor constituted excessive force." *Id.* at 497–98. That said, (Sixth Circuit) Judge Cole concurred and stated his belief that the officer's failure to warn Cockrell of his impending taser rose to a constitutional violation in that context. *Id.* at 498–99. The panel majority, however, expressly declined to reach that issue. *Id.* at 495 n.6.

In *Peabody*, a police officer chased a defendant named Hook up to an eight-foot fence. 2013 WL 1327026, at *2. Hook started climbing the fence, and the officer tased

---

[3] The Court notes that, at the time Brown fled from Giles, Brown had, at a minimum, given Giles a false name, a misdemeanor in Ohio. *See* O.R.C. § 2921.29. Giles believes that Brown had also obstructed official business and failed to comply with the lawful orders of a police officer in violation of O.R.C. §§ 2921.31 and 331, but even if one credits only Brown's refusal to provide his actual name, that alone counts as a "nonviolent misdemeanor."

him. *Id*. The taser took effect when Hook had reached the top, and he fell onto the other side of the fence, suffering severe head injuries. *Id*. The *Peabody* court found Hook's right to be free from lethal force applied, heavily weighting the relevance of Hook's position atop an eight-foot fence. *Id*. at \*9. Revealing the importance of that fact to the court's resolution, the *Peabody* court also noted that "[i]f the situation were the exact same but Hook's flight from arrest was not over an eight foot fence, no reasonable jury could find that the amount of force used was excessive." *Id*. And it also noted that it "would not second guess [the officer's] split-second decision to tase Hook instead of tackling him or letting him escape." *Id*.

The Court believes that the current case is more like *Cockrell* than *Peabody*. For one, Giles tased Brown as he ran down the street. Brown was not tased while on a fence or anything of the like. Again, *Peabody* specifically ruled out circumstances not involving an eight-foot fence, noting that without a fall from such a height, "no reasonable jury could find that the amount of force used was excessive." *Id*. Brown has identified no case that would have put a reasonable officer on notice that deploying his taser without warning on a suspect fleeing down an alley violated his constitutional rights.[4] The debate itself between the parties as to which case is more apposite might best illustrate that no such case exists.

---

[4] The Court notes that were it to hold that tasing someone when they are running on pavement constituted excessive force, the use of tasers would be significantly cabined, given the realistic nature of law enforcement interactions that occur on streets, in parking lots, and on other hard surfaces. The Court declines such an invitation.

To be sure, the Supreme Court has acknowledged that "officials can still be on notice that their conduct violates established law even in novel factual circumstances" even without a case directly on point setting that out. *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). But even with that caveat, Brown has offered nothing to show that the way Giles deployed the taser against him here violated any clearly established rights at the time of the incident.[5]

Brown also makes much of Giles's alleged malice or callous disregard in deciding to tase him, pointing to Giles's statement that it was "too hot to run" and his supposed knowledge that the tasing would incapacitate Brown. But Giles's motives are irrelevant here. Under the Fourth Amendment, the Court considers the "objective reasonableness" of Giles's actions, not "subjective concepts like 'malice.'" *Graham v. Connor,* 490 U.S. 386, 399 (1989). The same is true under the Fourteenth Amendment. *See Kingsley v. Hendrickson,* 576 U.S. 389, 391–92 (2015). And, as noted, settled Sixth Circuit case law supports the objective reasonableness of Giles's decision to tase a fleeing wanted suspect.

In short, Brown has failed to plausibly allege that Giles violated a clearly established right. That means that Giles receives qualified immunity.

---

[5] Brown also alleges that Giles intentionally shot him in the head with his taser and that this contributes to the constitutional violation here. (*See, e.g.,* Doc. 1, #7). But the out-of-circuit case on which he relies for this argument does not help his case. There, the court expressly noted that the officer's intent did not matter. *See Wilson v. City of Lafayette*, 510 F. App'x 775, 780 (10th Cir. 2013). This makes sense. As described above, the test is objective, not subjective. *See id.*; *see also Graham*, 490 U.S. at 397. In any event, the video footage here does not support the notion that Giles intentionally tased Brown in the head. To be sure, anytime an officer who is running deploys a taser against someone else who is also running, exactly where the taser prongs land will be difficult to predict. But the Sixth Circuit has held that taser use in that setting does not violate a clearly established constitutional right.

**B.     Official Capacity Claims Against Murphy and the Village of Coal Grove**

Brown next believes he has adequately pled a municipal liability claim against

Chief Murphy and the Village of Coal Grove. Considering the Court's determination

above, though, that claim cannot proceed. According to the Sixth Circuit, "[t]he

absence of a clearly established right spells the end of [a] *Monell* claim." *Arrington-*

*Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017). Even if Brown could

overcome the problems above and make a colorable claim that Giles violated his

clearly established rights, Brown's *Monell* claim still fails. For the sake of

completeness, the Court explains why.

Under § 1983, Brown must show that any violation "occurred because of a

municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)

(citing *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)).

To meet this burden, Brown can offer one of four things: (1) the existence of an illegal

official policy or enactment; (2) the existence of a policy of inadequate training or

supervision; (3) the existence of a custom of tolerance or acquiescence to federal rights

violations; or (4) that an official with final decision-making authority ratified the

illegal actions. *See id.*; *see also Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th

Cir. 2005).

Against that backdrop, the Complaint is unclear about *why* Murphy and the

Village allegedly are liable under *Monell*. (*See* Doc. 1, #11–12). At one point, Brown

mentions a failure-to-train claim. (*Id.* at 12). But later, he shoehorns the "policy or

custom" language from *Monell* into the facts of the incident to claim that the Village

11

of Coal Grove police department had an official policy or custom endorsing Giles's actions. (*Id.*). Either way, Brown has not met his burden.

Start with the failure-to-train claim. This claim requires Brown to show "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess*, 735 F.3d at 478 (cleaned up). Brown has made no such showing. For one, he had to show "instances," plural. But like the plaintiff in *Burgess*, Brown has "not shown the existence of any prior instances of failure to investigate claims of excessive force." *Id.* at 479. So Brown has only the current instance.

True enough, the Supreme Court has acknowledged a "narrow range of circumstances" in which a single event may suffice for a failure-to-train claim. *Connick v. Thompson*, 563 U.S. 51, 63 (2011). But to take advantage of that option, Brown must show "a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 567 (6th Cir. 2011). Brown makes no such allegations here.

Put differently, if Brown had shown that Giles violated his constitutional rights (which is far from clear), he fails to show that the violation occurred because of the Village's (or the police department's) "customs, usages, or official policies." *Moniz v. Hines*, 92 F. App'x 208, 211 (6th Cir. 2004). Conversely, Brown "does not

allege a single fact related to the training the City provides its police officers, any prior incidents involving comparable uses of force by [local law enforcement], or anything else that would plausibly suggest that the city maintained a policy or custom that contributed to the alleged deprivations" of his rights. *Boddy v. City of Memphis*, No. 22-5259, 2022 WL 12258977, at *3 (6th Cir. Oct. 21, 2022). Brown cites no police training manual or any Village policy. Nor does he allege, for example, that Giles ever sought the Chief's (or anyone else's) opinion before tasing Brown. *Cf. Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 260 (6th Cir. 2015). Simply asserting the bare legal conclusion that the police department's taser policy is unconstitutional, with no factual allegations to back that up, does not push Brown's claim beyond "possibility" to "plausibility." *Twombly*, 550 U.S. 544, 557 (2007); *Iqbal*, 556 U.S. at 670.

Brown's policy or custom claim suffers from the same malady. His complaint repeatedly invokes his belief that "the policy or custom of the Goal Grove defendants" allowed officers to do what Giles did here. (*See* Doc. 1, #11). But again Brown makes no assertions beyond "a bare recitation of the legal standards." *Brown v. Cuyahoga Cnty.*, 517 F. App'x 431, 436 (6th Cir. 2013). And his complaint is "bereft … of any factual allegations that could plausibly support these sweeping assertions." *Boddy*, 2022 WL 12258977, at *3. That is not enough.

Brown further alleges that the police department's actions "violate clearly established law." But he points to no policy or act on the department's behalf that could violate the law and identifies no authority to support his theory. Instead, his

claims appear to be respondeat superior claims masquerading as municipal liability claims. *Monell* prohibits that. 436 U.S. at 694–95. So these claims fail.

**C.      Individual Capacity Claim Against Spurlock**

Finally, Brown alleges that Spurlock "personally enacted and/or implemented policies or customs which were unconstitutional and permitted the excessive use of force by TASER ...." (Doc. 1, #12). This claim differs from an official-capacity claim. Instead, Brown "seeks to hold [Spurlock] personally liable for the wrong alleged." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016).

For this claim to succeed, Brown must satisfy the requirements of supervisory liability under § 1983. This means he must show that "a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1983)). Such a claim requires "active unconstitutional behavior" from that official. *Peatross*, 818 F.3d at 241; *see also Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."). The Court finds that Brown has failed to plausibly allege this claim as well.

Showing supervisory liability is an uphill battle because of its "sharp limits." *Crawford*, 15 F.4th at 760. For example, merely failing to act is insufficient, *Peatross*, 818 F.3d at 241, as is "overseeing a subordinate who violated the constitutional right of another," *Winkler v. Madison Cnty.*, 893 F.3d 877, 898 (6th Cir. 2018). Even

recklessness and negligence do not suffice. *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020).

Undeterred by these limitations, Brown repeatedly asserts that Spurlock "enacted and pursued" unconstitutional policies "knowing that officers … would act consistent with his unconstitutional dictates and subject individuals such as Mr. Brown to the very harm which he suffered." (*See, e.g.*, Doc. 1, #13). He also alleges that Spurlock "personally enacted and/or implemented policies or customs which were unconstitutional and permitted the excessive use of force by TASER when no such force was appropriate or necessary." (*Id.* at #12–13). But Brown again identifies no *facts* supporting his claim, including, for example, any reference to any specific policies that Spurlock allegedly implemented. Instead, Brown implicitly asks the Court to permit a fishing expedition in discovery so that he may search the Defendants' records after-the-fact to see if there is any support for his claims.

True enough, the Court must construe any factual allegations in Brown's favor and accept any inferences that naturally arise from that construction. But the Court need not accept "*unwarranted* factual inferences." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008) (emphasis added). And put simply, Brown has alleged no facts from which the Court could plausibly infer that Spurlock engaged in unconstitutional behavior. Instead, he has "thrown a concoction of conclusory constitutional allegations against the wall, hoping that one might stick." *Rolle v. Kimbler*, No. 2:20-CV-35, 2020 WL 5016801, at *3 (S.D. Ohio Aug. 25, 2020). That is not enough. "[A]rmed with nothing more than conclusions," Brown's threadbare

15

allegations that Spurlock should be liable for some unidentified actions cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 679. So this claim fails too.

## CONCLUSION

It is well-settled that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)). And on the facts in the Complaint, Brown has not created a plausible inference that he is entitled to relief against any of the Defendants here. For this reason, the Court **GRANTS** the Defendants' Motion to Dismiss (Doc. 5) and **DISMISSES** Brown's Complaint (Doc. 1) **WITH PREJUDICE**. The Court thus **DIRECTS** the Clerk to enter judgment and **TERMINATE** this case on its docket.

**SO ORDERED.**

February 3, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

16